UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MICHAEL COLLINS,

                              Plaintiff,

           -against-

UNITED STATES POSTAL SERVICE,
UNITED STATES OF AMERICA, and
MICHAEL R. SCHOLL,

                         Defendants.
----------------------------------------------------------X

**MEMORANDUM & ORDER**
18-cv-4752 (SJF) (ARL)

**FILED**
**CLERK**

5/26/2020 10:11 am

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

FEUERSTEIN, District Judge:

        Plaintiff Michael Collins ("Plaintiff" or "Collins") commenced this action pursuant to the

Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.,* against the United States Postal

Service ("USPS"), United States of America, and Michael R. Scholl ("Scholl") (collectively,

"Defendants") seeking to recover damages as a result of an accident involving Plaintiff and a

USPS tractor trailer driven by Scholl.  Currently before the Court is Defendants' motion to

dismiss the complaint pursuant to Rule 12(b)(1) and Rule 12(h)(3) of the Federal Rules of Civil

Procedure for lack of subject matter jurisdiction..  *See* Docket Entry ("DE") [29].  Plaintiff has

opposed the motion.  For the reasons set forth herein, the motion is granted.

## I.  BACKGROUND

### A. Factual Allegations

        The following facts are taken from the complaint ("Compl."), DE [1], and are assumed to

be true for purposes of this motion.  On October 25, 2017 at approximately 5:04 a.m., Collins, a

pedestrian, was struck by a USPS tractor trailer driven by Scholl, a USPS employee.  The

accident occurred on East Jericho Turnpike, approximately one-hundred feet east of Melville

Road, in Huntington, New York.  Collins suffered a serious injury as defined by New York

Insurance Law §5102.  As a result of Defendants' negligence, Plaintiff suffered internal and

external injuries, and "said injuries are permanent, lasting and disabling all to him damage in

sum of TEN MILLION ($10,000,000) DOLLARS."  Complaint, ¶24.  This amount is alleged to

be his actual damages.  *Id.*, Wherefore Cl., ¶A.

On or before December 29, 2017, Plaintiff filed a claim with the USPS pursuant to 28

U.S.C. §2675(a), dated December 15, 2017, against the USPS and Scholl.  Kimberly Herbst is

identified as the Tort Claim Examiner on Plaintiff's claim.  The complaint alleges that more than

six months have passed since the claim was filed, the claim has not been disposed of by the

USPS, and "the action is timely commenced pursuant to 28 U.S.C. §§2401 and 2675(a)."

Compl. ¶10.

**B.  Administrative & Procedural History**

The following facts are taken from the complaint and from the materials submitted on the

motion.[1]  The USPS National Tort Center ("USPS-NTC") received Plaintiff's claim, submitted

on a Standard Form 95 ("SF95" or the "claim"), on December 29, 2017. Herbst Decl. ¶3.  In

response to question 10 on the SF95 regarding the nature and extent of the injury forming the

basis of the claim, Plaintiff responded "fractured left knee; 6 rib fractures (3 front, 3 back); left

elbow, exposed bone and/or fracture; head; chest, including chest infection; equilibrium issues;

blood infection; as of 12/15/17, claimant is in hospital/ICU."  SF95, Herbst Decl. Ex. A.  The

SF95 was submitted with a cover letter dated December 15, 2017 from Plaintiff's attorney,

Salvatore R. Marino, stating that "attached are medical bills for Mr. Collins, and please note that

---

[1] Declaration of Salvatore R. Marino, Esq. ("Marino Decl."), DE [34]; Declaration of Kimberly A. Herbst ("Herbst Decl."), DE [32]; Declaration of James H. Knapp, AUSA ("Knapp Decl."), DE [31]; and Supplemental Declaration of James H. Knapp, AUSA ("Supp. Knapp Decl."), DE [36].

he is currently in the hospital/ICU treating for his injuries." Herbst Decl., Ex. B. The medical bills totaling $42,785.92 are not itemized and do not indicate any specific services rendered. Supp. Knapp Decl., Ex. G.

On January 8, 2018, Herbst sent a letter to Marino acknowledging Plaintiff's claim and advising counsel that the USPS has six months from December 29, 2017 to adjudicate the claim. Herbst Decl., Ex. C. This letter did not request additional documentation, but rather stated that "[s]hould you have any additional information you wish to submit that would be helpful in the review of this matter, please forward same" to Herbst at the USPS-NTC. *Id.* "Between February 13, 2018 and July 30, 2018, the USPS-NTC had several discussions with and sent letters to plaintiff's attorneys regarding the need for medical documentation needed in order to fully evaluate plaintiff's claim." Herbst Decl., ¶6. No details of these discussions are provided, but several letters have been submitted and are discussed below.[2]

On February 28, 2018, Plaintiff's counsel provided the USPS-NTC with a HIPAA authorization for Huntington Hospital "to obtain Claimant's medical records" and a bill from Huntington Hospital in the amount of $65,015.76. Marino Decl., Ex. 2 ("Pl. 2/28/18 ltr."). This letter further states that "once this firm receives more items/information that can assist you in your evaluation (such as further medical records), then we will forward them to you as well." *Id.* The bill covers the service dates of October 25-30, 2017.

On April 3, 2018, Plaintiff's counsel provided the USPS-NTC with medical records from Huntington Hospital covering the period of Collins' initial hospitalization, October 25-30, 2017.

---

[2] Plaintiff references one such conversation from July 2018, but does so only in his memorandum of law in opposition, *see* Plaintiff's Memorandum of Law in Opposition, DE [33], at p. 8, and not by declaration or any other form of admissible evidence.

Marino Decl., Ex. 1 ("Pl. 4/3/18 ltr.").   The letter states that counsel was "awaiting more records from this hospital and will forward these to you upon receipt."  *Id.*

On June 12, 2018, Herbst wrote to Plaintiff's counsel advising that she had had the opportunity to review the claim and documentation from the October 2017 hospitalization, and found that, in order to properly evaluate the claim, additional documentation was needed.  Knapp Decl., Ex. E ("USPS 6/12/18 ltr").  Specifically, she asked counsel to provide "the ambulance report, complete records from the hospitalization, and records for treatment Mr. Collins received after 10/30/2017 along with all medical billings, no fault payment log, and documentation regarding any outstanding liens."  *Id.*

By letter dated June 19, 2018, Plaintiff's counsel responded to the USPS-NTC's June 12th letter.  Knapp Decl., Ex. F ("Pl. 6/19/18 ltr.").  Regarding the document request, counsel stated that "we have sent you full medical records from Mr. Collins' first hospitalization at Huntington Hospital (10/25/17 – 10/30/17), which includes the ambulance report," referenced the $65,000+ bill for this time period sent in February 2018, and noted that Plaintiff was not receiving No Fault benefits.  *Id.*  Counsel further identified five (5) additional medical providers for which counsel was "awaiting records and medical bills," noted that he was awaiting records from Huntington Hospital for an additional admission period of November 12, 2017 to December 26, 2017, and advised that Plaintiff "is currently readmitted to Huntington Hospital to treat an infection stemming from the surgery he had on his left knee as a result of this accident."  *Id.*

The June 19, 2018 letter from Plaintiff's counsel also enclosed a supplement to his response to question 10 on the SF95, noting that as they were awaiting "an abundance of medical records, we reserve the right to further supplement this claim."  Pl. 6/19/18 ltr.  The supplement

4

set forth the following items constituting "the nature and extent of" the injuries forming the basis

of the claim:

- Closed non-displaced fracture of femoral condyle;
- 10/26/17: Open reduction and internal fixation of the left femoral condyle;
- Acute fractures of the left second and third ribs anteriorly;
- Acute fractures of the left fourth and fifth ribs segmentally, posteriorly and anteriorly, with the posterior fracture fragments mildly comminuted and overriding;
- Acute fractures of the left sixth rib posteriorly;
- Impacted fractures of the anterior right third and fourth ribs;
- Compression fracture within the T7 vertebral body, with loss of 50% of vertebral body height; [and]
- Pneumothorax.

*Id.*

As of July 30, 2018, Plaintiff's counsel had provided "medical records and billing from

Huntington Hospital covering treatment plaintiff received only during October, 2017, but no

records or billings for plaintiff's subsequent treatment." Herbst Decl., ¶6. On August 22, 2018,

Plaintiff commenced the instant action.

Upon receiving notice that the suit was filed, the USPS-NTC denied Plaintiff's claim by

letter dated September 12, 2018. Herbst Decl. ¶8; *id.* Ex. D ("Denial Letter"). The Denial Letter

addressed to Plaintiff's counsel states that "[d]espite our discussions regarding additional

treatment your client received beyond his initial hospitalization, you refused to provide records

for the additional treatment. As such, due to your failure to submit competent evidence of your

client's injuries and damages as is required, the above-referenced administrative claim is hereby

denied." Denial Letter. It additionally advised Plaintiff of the right to commence suit in United

States District Court and the right to seek reconsideration of the claim with the USPS-NTC.

Plaintiff did not seek reconsideration of the denial with the agency. Herbst Decl. ¶9.

This case initially proceeded to discovery, but was stayed at Defendants' request in anticipation of the filing of the instant motion. Defendants now seek dismissal, claiming that the Court does not have subject matter jurisdiction in light of Plaintiff's failure to adequately present his claim for review at the administrative level.

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss Standards

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss an action." FED. R. CIV. P. 12(h)(3).  Defendants move to dismiss for lack of subject matter jurisdiction under Rule 12(h)(3) and Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Motions brought pursuant Rule 12(b)(1) and Rule 12(b)(1) are subject to the same standards.  *See, e.g., Greystone Bank v. Taverez,* No.09-CV-5192, 2010 WL 3325203, at *1 (E.D.N.Y. Aug. 19, 2010) ("Except for the pre-answer limitation on Rule 12(b)(1) motions, the distinction between a Rule 12(b)(1) motion and a Rule 12(h)(3) motion is largely academic, and the same standards are applicable to both types of motions").  "A case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000).  Events occurring subsequent to filing are irrelevant to a determination of whether subject matter jurisdiction exists.  *See Collins v. Lindstrom,* No. 18 CIV. 6696, 2018 WL 6547054, at *2 (S.D.N.Y. Nov. 26, 2018) ("Subject-matter jurisdiction is determined at the time of filing; subsequent events are irrelevant to that determination.")

To resolve the jurisdictional question, the court may consider relevant evidence outside the pleadings.  *Makarova,,* 201 F.3d at 113.  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *McGowan v. United States,* 825 F.3d

118, 125 (2d Cir. 2016)); *see also Furman v. U.S. Postal Serv.,* 349 F. Supp. 2d 553, 556

(E.D.N.Y. 2004) (noting that "[t]he party asserting jurisdiction has the burden of pleading and

proving compliance with the procedural requirements of the FTCA").

**B.  FTCA Jurisdictional Requirements**

The United States, as sovereign, is immune from suit absent a waiver of that immunity by

statute.  "One such 'limited waiver' of sovereign immunity is provided by the FTCA, which

allows for a tort suit against the United States under specified circumstances." *Cooke v. United

States,* 918 F.3d 77, 81 (2d Cir. 2019) (internal quotation marks and citation omitted).  Matters

concerning the waiver of sovereign immunity are strictly construed in favor of the government.

*See id.* at 80.

"The FTCA requires that a claimant exhaust all administrative remedies before filing a

complaint in federal district court.  This requirement is jurisdictional and cannot be waived."

*Celestine v. Mt. Vernon Neighborhood Health Ctr.,* 403 F.3d 76, 82 (2d Cir. 2005) (citing

*McNeil v. United States,* 508 U.S. 106, 113, 113 S. Ct. 1980, 124 L. Ed. 2d 21 (1993)).  "The

purpose of the exhaustion requirement is to allow the government to investigate, evaluate and

consider settlement of a claim, in order to ease court congestion and avoid unnecessary litigation,

while making it possible for the Government to expedite the fair settlement of tort claims

asserted against the United States." *Furman,* 349 F. Supp. 2d at 557 (internal quotation marks

and citations omitted).  The party asserting this court's jurisdiction has the burden "to both plead

and prove compliance with the statutory requirements" of the FTCA,  and "[i]n the absence of

such compliance, a district court lacks subject matter jurisdiction over the plaintiff's claim." *In

re Agent Orange Prod. Liab. Litig.,* 818 F.2d 210, 214 (2d Cir. 1987).

Prior to filing suit, the FTCA mandates that a plaintiff present his claim to the appropriate federal agency and receive a final denial, in writing, from that agency.  *See* 28 U.S.C. §2675(a) (no action shall be instituted "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail").  The presentment requirement is satisfied "when the claimant files (1) a written notice of claim that sufficiently describes the injury so that the agency can investigate and ascertain the strength of a claim and (2) a sum certain damages claim." *Romulus v. United States ("Romulus I"),* 983 F. Supp. 336, 340 (E.D.N.Y. 1997) (internal quotation marks and citation omitted), *aff'd Romulus v. United States ("Romulus II"),* 160 F.3d 131 (2d Cir. 1988).  However, "[t]he mere filing of a form 95 is not necessarily sufficient to satisfy presentment." *Lee v. United States ("Lee I"),* No. 11-CV-331, 2013 WL 4048329, at *4 (E.D.N.Y. Aug. 9, 2013), *aff'd, Lee v. United States ("Lee II"),* 570 F. App'x 26 (2014).  To be adequate, the notice "must provide enough information to permit the agency to conduct an investigation and to estimate the claim's worth." *Romulus II,* 160 F.3d at 132.

Section 2672 of the FTCA authorizes the agency to settle claims, and various regulations have been promulgated under this section.  Unlike the presentment requirement, the Second Circuit has not decided whether these regulations are jurisdictional.  *See Keene Corp. v. United States,* 700 F.2d 836, 842 (2d Cir. 1983); *Lee II,* 570 F. App'x at 28;  *State Farm Mut. Auto. Ins. Co. v. United States,* 326 F. Supp. 2d 407, 412 (E.D.N.Y. 2004).  While a plaintiff "need not comply with the settlement procedures set out in the C.F.R. pursuant to §2672 to establish proper presentment," *Romulus I,* 983 F. Supp. at 340, he must "provide enough information to permit the agency to conduct an investigation and to estimate the claim's worth."  *Romulus II,* 160 F.3d at 132.  To constitute adequate notice for the purpose of presentment, the claim "must be specific

enough to serve the purpose of the FTCA to enable the federal government to expedite the fair settlement of tort claims." *Id; see also Walia v. Napolitano,* 986 F. Supp. 2d 169, 185 (E.D.N.Y. 2013) ("presentment requires the claimant to present evidence sufficient to allow the agency to investigate and evaluate the claim with an eye toward determining whether to settle the claim or deny it."); *Wang v. United States,* No., CV-06-3050, 2007 WL 9710549, at * (E.D.N.Y. Jan. 30, 2007) ("The Government has to know whether to settle the claim or litigate it, and if litigate it, what kind of resources it will likely take to do so.  Plaintiffs' claim did not provide sufficient information to do that.")

An action commenced in district court prior to the issuance of the agency's final decision is premature and is not saved by the denial of the administrative claim issued subsequent to the initiation of suit.  *See McNeil,* 508 U.S.at 113 (noting that "[e]very premature filing of an action under the FTCA imposes some burden on the judicial system"); *Otavalo v. United States,* No. 09-CV-5446, 2010 WL 4961660, at *3 (E.D.N.Y. Nov. 30, 2010) (citing *McNeil* for the proposition that "the FTCA exhaustion requirement is jurisdictional and that the subsequent denial of an administrative claim cannot cure a prematurely filed action invoking the FTCA").

## III.  DISCUSSION

Defendants contend that this action was prematurely filed since Collins failed to properly present his claim by failing to provide additional documentation requested by the USPS-NTC. As a result, the agency could not properly evaluate the claim.  Plaintiff claims that the USPS-NTC was fully informed of his claim via (1) the SF95, (2) the medical records provided on April 3, 2018, (3) the hospital bill of $65,015.76, and (4) the provision of an executed HIPAA authorization for Huntington Hospital. Plaintiff's Memorandum of Law in Opposition ("Pl. Opp.") at 3, DE [33].  He suggests that since over six months had elapsed since the submission

9

of his claim in December 2017 and the agency had not disposed of it, he was entitled by statute to commence this action. *See* 28 U.S.C. §2675(a) ("The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section").

The SF95 submitted in December 2017 is, by itself, insufficient to present Plaintiff's claim.  It provides a description of the incident, a sum certain, and a perfunctory list of the alleged injuries, but provides no medical records or documentation supporting the claimed injuries.   Mere filing of an SF95 is not sufficient where it does not include information that would allow the agency to meaningfully evaluate the claim. *See Lee I,* 2013 WL 4048329, at *5 (no presentment where the "notice of claim provided only a general description of [claimant's] injuries and included no information that would allow the [agency] to deduce the extent or severity of those injuries, such as itemized medical bills or other medical documentation"); *Furman,* 349 F. Supp. 2d at 558 ("the information provided on [the SF95] was not 'specific enough to enable the federal government to expedite the fair settlement of tort claims'" (quoting *Romulus II,* 160 F.3d at 132)).  Thus, Plaintiff's filing of the SF95 in December 2017 did not constitute presentment within the meaning of §2675(a).

While it is clear that submission of the SF95 was not, by itself, sufficient to present his claim, the next question is whether the claim was properly presented at some subsequent point. In other words, did Plaintiff eventually supply enough documentation to conclude that the claim was properly presented within the meaning of the FTCA?[3]

---

[3] The question of the sufficiency of the evidence provided to the agency concerns whether Plaintiff adequately presented his claim under §2675(a) and does not implicate the settlement provision §2672 and the related regulations.

On February 28, 2018, Plaintiff's counsel provided the USPS-NTC with a HIPAA authorization for Huntington Hospital only, and a recent bill from that hospital in the amount of $65,015.76. Pl. 2/23/18 ltr. It is Plaintiff's burden "to provide evidence of the value of his claims, rather than the government's burden to discover them." *Hardie v. United States,* No. 17-CV-1201, 2018 WL 5268112, at *2 (E.D.N.Y. Oct. 23, 2018). Plaintiff has provided neither argument nor case law supporting the proposition that providing an agency with a medical authorization for one provider satisfies his burden. As to the bill, it contains only a Summary of Charges of thirteen lines of categories including, for example, "CT Scan," "Laboratory," Operating Room Services," and "Room & Board," but fails to itemize any category in any way. As such, it failed to provide the USPS-NTC with any meaningful information helpful towards evaluating Plaintiff's claim.

The first, and only, medical records documenting Plaintiff's injuries and treatment were provided to the USPS-NTC on or about April 3, 2018. Those records pertain only to his hospitalization and treatment from October 25 to 30, 2017, immediately following the accident. If Plaintiff's claim were limited to the damages incurred through that date, it is possible that his claim might have been properly presented upon submission of those records.[4] The facts do not, however, support the conclusion that Plaintiff's claim encompassed only his treatment and condition in October 2017.

---

[4] If Plaintiff's claim had been adequately presented with the submission of the October 2017 hospitalization records on or about April 3, 2018, the USPS-NTC's six-month time period would have begun to run at that point and would have expired in October 2018. Accordingly, Plaintiff's filing of this action in August 2018 is premature under this scenario as well.

Plaintiff's current contention is that the October 2017 records "contain *all* of plaintiff's pertinent injuries set forth in the Claim" as amended by the June 19, 2018 letter,[5] Pl. Opp. at 7 (emphasis in original), but it is clear from the correspondence that the treatment went well beyond the initial hospitalization and that he claimed that his injuries required significant additional care.  In addition to the original hospitalization in October 2017, Plaintiff was hospitalized on at least two additional occasions—from November 12, 2017 to December 26, 2017, and for some undisclosed period in June 2018.  *See* Pl. 6/19/18 ltr.  No records were provided for either of these stays, nor did he provide any details that would allow the USPS to evaluate the extent to which, if any, these admissions were related to the incident.

Plaintiff also suggested that his injuries were more far reaching than what was indicated in his October 2017 hospitalization records.  The disparity between the "sum certain" of $10,000,000 set forth on the SF95 and the medical bills submitted totaling just over $65,000 by itself warranted investigation by the agency and yet Plaintiff refused to provide the USPS-NTC with any documentation that would allow it to properly evaluate his claim.  For example, it is difficult to imagine how the agency could have meaningfully evaluated the reasonable costs of Plaintiff's long-term prognosis and treatment needs absent any documentation whatsoever bearing on those issues.  Indeed, the SF95 Instructions indicate that a claim for personal injury should be substantiated by a written report from an attending physician showing, *inter alia,* "the nature and extent of treatment, the degree of permanent disability, if any [and] the prognosis." SF95, back.  USPS-NTC specifically requested "records for treatment Mr. Collins received after 10/30/17."  USPS 6/12/18 ltr.  While Plaintiff's counsel promptly responded to this letter, his response included only a list of five (5) additional providers with which Plaintiff "treated . . . for

---

[5] Curiously, even this statement is qualified by the proviso that his injuries are "including but not limited to the following," Pl. Opp. at 7, suggesting that perhaps these are not "all" his injuries.

his injuries resulting from the incident," and the representation that he was "still awaiting records and medical bills from these facilities."  Pl. 6/19/18 ltr.  No records were ever provided for any of these designated providers or services.[6]

> "[W]here a notice of claim itself provides sufficient information . . . the failure to provide additional information would not defeat jurisdiction.  However, where a notice of claim itself is not sufficient, the failure to provide requested information is a missed opportunity to cure the defect."  *Wang,* 2007 WL 9710549, at *3.   Given the nature of Plaintiff's claim and the suggestion that his injuries required hospitalizations and treatment well beyond the initial care, his claim could not be properly presented until he provided the agency with some documentation to substantiate his condition and prognosis that would allow the USPS-NTC to properly evaluate his claim. In the absence of such information, the agency was in no position to determine, even preliminarily, whether settlement was feasible.  Plaintiff failed to take advantage of the opportunities presented to cure the defects in his claim and this failure to provide information ultimately led to the denial of his claim.  *See* Denial Letter ("[d]espite our discussion regarding additional treatment your client received beyond his initial hospitalization, you refused to provide records for the additional treatment"); *see also Furman,* 349 F. Supp. 2d at 558 (noting

---

[6] The June 19, 2018 letter also included an express amendment to the SF95.  The amended response added some medical terminology to previously disclosed injuries, for example, revising "fractured left knee" to "closed non-displaced fracture of femoral condyle," it also *added* two conditions/injuries—pneumothorax and compression fracture within the T7 vertebral body.   Regulations provide that a claimant may amend his claim at any time prior to final action by the agency, such amendments to be made in writing and signed by the claimant or his legal representative.  *See* C.F.R. §14.2(c).  However, "[u]pon the timely filing of an amendment to a pending claim, the agency shall have six months in which to make a final disposition of the claim as amended and the claimant's option under 28 U.S.C. 2675(a) [to commence suit] shall not accrue until six months after the filing of an amendment."  *Id.*  Accordingly, to the extent this was an amendment of the SF95, the USPS-NTC's time to consider the claim was likely extended to at least December 19, 2018, and the filing of this action in August 2018 was premature on this basis as well.

that "a denial for improper presentment. . . is 'not to be construed as a 'final denial' within the meaning of the [FTCA]'" (quoting *Romulus I,* 983 F. Supp. at 343)).

Plaintiff argues that given the "catastrophic injuries" he suffered and his "continuous medical treatment of same," his claim "likely could not, in good faith, have been settled within six month claims period, and instead had to be adjudicated by way of timely filing an action with this Court." Pl. Opp. at 4-5, 17. Whether Plaintiff and his attorney held a good faith belief that litigation was inevitable given the complexity of his injuries is irrelevant. Such belief, even if sincerely held, does not relieve plaintiff of his obligations under FTCA to adequately present his claim to the agency prior to commencement of suit. *See, e.g., O'Connor v. United States,* No. 99 Civ. 0117, 2000 WL 375238, at *3 (S.D.N.Y. Apr. 12, 2000) ("Even good faith intention to comply with the requirements of Section 2675 cannot and does not substitute for actual compliance with the strict requirements of Section 2675"). As Plaintiff failed to provide the agency with sufficient information to evaluate his claim, he failed to satisfy the presentment requirement and thus this Court lacks subject matter jurisdiction to adjudicate his claim.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for lack of subject matter jurisdiction, DE [29], is granted. The Clerk of the Court is directed to close the case.

**SO ORDERED**.

/s/ *Sandra J. Feuerstein*
Sandra J. Feuerstein
United States District Judge

Dated: Central Islip, New York
       May 26, 2020

14